JUDGE COTE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GENE BROWN, KENNETH EDWARDS, ALAN HANDELL, ROBERT HEISS, CAROLINE JAISARIE, KRISTIN LEU, KEVIN O'SULLIVAN, JUAN PAZMINO, HARRY PRECOURT AND ROSALIND WILSON,

Plaintiffs,

-against-

PHILIP J. CALDARELLA,

Defendant.

Case No. _____  08 CV 0857

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION

## I. PRELIMINARY STATEMENT

Plaintiffs Gene Brown, Kenneth Edwards, Alan Handell, Robert Heiss, Caroline Jaisarie, Kristin Leu, Kevin O'Sullivan, Juan Pazmino, Harry Precourt and Rosalind Wilson, respectfully submit this memorandum in support of their application for a preliminary injunction to enjoin Defendant Philip J. Caldarella from proceeding against Plaintiffs in an arbitration currently pending before the American Arbitration Association ("AAA"), Case No. 13-460-02030-07 ("the Arbitration"). Defendant commenced the Arbitration against Plaintiffs despite the fact that Plaintiffs never signed any agreement to arbitrate with Defendant or otherwise evinced an intent to be bound by an arbitration agreement with Defendant. Defendant's actions in pursuing the Arbitration against them have caused, and will continue to cause, irreparable harm to Plaintiffs by forcing them into an arbitration in which they are not contractually bound to participate. In the absence of the requested relief, Plaintiffs will be involuntarily forced to spend time and resources arbitrating a dispute in a forum which lacks jurisdiction over them and for which any award would not be enforceable as against them.

## II.    STATEMENT OF FACTS

Plaintiffs are current or former Board members of Binding Together Incorporated, ("BTI"), a not-for-profit organization whose mission is to train, educate, and empower individuals with disabilities and multiple barriers to employment including the homeless, ex-offenders, the unemployed and underemployed, by providing vocational training and employment opportunities. Board members for BTI serve on a volunteer basis; Plaintiffs do not, and have not, received compensation for their work on BTI's Board.

Defendant Philip J. Caldarella is the former Executive Director of BTI. His employment was governed by an employment contract dated March 18, 2004 (the "employment contract"). (Compl., Ex. A.) The employment contract contained an arbitration provision at paragraph 12 pursuant to which Defendant agreed to arbitrate disputes with BTI arising under the contract with the American Arbitration Association. *Id.* BTI and Defendant were the only parties to the employment contract. *Id.* The contract was signed by Defendant and Barbara Small, former Chairman of the Board of Directors of BTI, on BTI's behalf. *Id.* Ms. Small is no longer a Board member of BTI, was not named as a respondent in Defendant's arbitration, and is not a plaintiff in this action. None of the Plaintiffs signed the employment contract containing the arbitration provision, nor did any of them sign any other contract with Defendant containing an arbitration provision or otherwise evince an intent to be personally bound by an agreement to arbitrate disputes with Defendant.

On or about June 1, 2007, BTI terminated Defendant's employment with BTI. Shortly thereafter, on or about September 25, 2007 Defendant, purportedly invoking the arbitration provision of the employment contract, initiated a claim before the American Arbitration

Association against BTI and Plaintiffs in their individual capacities. The claim alleges breach of the employment contract and seeks $569,491 in damages, as well as attorneys' fees and costs. (Compl., Ex. B.) On or about November 14, 2007, Defendant amended his arbitration claim to add a New York Labor Law claim, including a claim for punitive damages. (Compl., Ex. C.)

On December 3, 2007, BTI and Plaintiffs filed an Answer to the arbitration claim. In the Answer, Plaintiffs asserted as an affirmative defense that "The AAA does not have jurisdiction over the individual Respondents." (*See* Phillips Decl. Ex. A.) The AAA arbitrator held a management conference on December 14, 2007, during which counsel for Plaintiffs reiterated the defense that the AAA did not have jurisdiction over Plaintiffs. It was agreed by the parties and the AAA that Plaintiffs would file for relief in court by the end of January.

### III.   ARGUMENT

#### A.   Standard for Preliminary Injunction

To obtain preliminary injunctive relief, Plaintiffs must show "that [they] are likely to suffer possible irreparable injury if the injunction is not granted and either (1) a likelihood of success on the merits of [their] case or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of the hardships tipping decidedly in [their] favor." *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904 (2d Cir. 1990) (internal quotation and citations omitted). Here, Plaintiffs meet all of the standards for preliminary injunctive relief, and their application should be granted accordingly.

#### B.   Plaintiffs Will Suffer Irreparable Harm in the Absence of a Preliminary Injunction

Arbitration is a matter of contract, and a party cannot be required to submit to arbitration to which he did not agree to submit. *Merrill Lynch Inv. Mgrs. v. Optibase, Ltd.*, 337 F.3d 125, 131 (2d Cir. 2003). Thus, it is well-settled that compelling arbitration of a matter not properly

subject to arbitration constitutes a *per se* irreparable harm. *See id.* at 129 (movant would be irreparably harmed by being forced to arbitrate dispute not subject to arbitration agreement because it would be "forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable"); *Castlewood (US), Inc. v. Nat'l Indem. Co.*, No, 06-CV-6842, 2006 WL 3026039, at *4 (S.D.N.Y. Oct. 24, 2006) (holding that nonsignatory to arbitration agreement would suffer irreparable harm if forced to arbitrate dispute, as "[c]ourts regularly have held that compelling arbitration of a matter not properly subject to arbitration constitutes a per se irreparable harm") (citations and internal quotations omitted); *Tellium v. Corning, Inc.*, No. 03 Civ. 8487, 2004 WL 307238, at *3 (S.D.N.Y. Feb. 13, 2004) (in absence of agreement to arbitrate, movant would suffer per se irreparable harm by being forced to arbitrate dispute); *Mount Ararat Cemetery v. Cemetery Workers and Greens Attendants Union Local 365, S.E.I.U.-A.F.L.-C.I.O.*, 975 F. Supp. 445, 447 (E.D.N.Y. 1997) (irreparable harm may be presumed where movant alleges it would be forced to arbitrate dispute it did not intend to be subject to arbitration).

Here, Plaintiffs did not sign the arbitration agreement at issue or otherwise agree to arbitrate disputes with Defendant. Thus, in the absence of injunctive relief, Plaintiffs will be irreparably harmed because they will be forced to arbitrate a dispute that is not arbitrable, and for which any award would not be enforceable. *See Merrill Lynch Inv. Mgrs.*, 337 F.3d at 129. Plaintiffs clearly satisfy their burden of alleging irreparable injury. *See Tellium*, 2004 WL 307238, at *3.

### C. Plaintiffs Are Likely to Succeed on the Merits of Their Claim

For the same reason, Plaintiffs are likely to succeed on the merits of their claim. "Absent an express agreement to arbitrate, [the Second Circuit] has recognized only limited theories upon

which it is willing to enforce an arbitration agreement against a nonsignatory." *Merrill Lynch Inv. Mgrs.*, 337 F.3d at 129 (citations and internal quotations omitted). "There are five such theories: '1) incorporation by reference; 2) assumption; 3) agency; 4) veil piercing/alter ego; and 5) estoppel.'" *See id.* (citing *Thomson-CSF, S.A. v. Am. Arbitration. Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)). "A willing signatory seeking to arbitrate with a non-signatory that is unwilling must establish at least one of these five bases," and it is Defendant's burden to demonstrate by a preponderance of the evidence the existence of an agreement to arbitrate. *See Tellium*, 2004 WL 307238, at *5 (citations omitted).

Here, Defendant will be unable to meet his burden because none of these limited theories apply. Incorporation by reference does not apply because Defendant did not "enter[ ] a separate contractual relationship with [Plaintiffs] which incorporate[d] the existing arbitration clause." *See Thomson-CSF*, 64 F.3d at 777. Plaintiffs do not have any contracts with Defendant in their individual capacities, let alone contracts that assume the arbitration clause of his employment agreement.

Assumption does not apply because Defendant cannot demonstrate that Plaintiffs "manifest[ed] a clear intent to arbitrate the dispute." *Castlewood*, 2006 WL 3026039, at *5. To the contrary, Plaintiffs explicitly disavowed any purported obligation to arbitrate under the employment agreement by asserting lack of jurisdiction as a defense in the arbitration, and by seeking relief through the instant action. *See Thomson-CSF*, 64 F.3d at 777 (no assumption where plaintiff disavowed any obligations arising under agreement and brought action seeking declaration of non-liability under the agreement).

Agency does not apply because there is no "clear and explicit evidence of [Plaintiffs'] intention to substitute or superadd [their] personal liability for, or to, that of [their] principal."

*See Veera*, 2005 WL 1606054, at *3 (rejecting agency argument where there was no evidence to suggest that plaintiffs intended to accept personal liability under agreements); *Merrill Lynch Inv. Mgrs.*, 337 F.3d at 130 (allegations of mutual benefits derived from affiliation insufficient to support agency theory). Indeed, there can be no dispute that the majority of the Plaintiffs were not even Board members at the time the employment agreement was signed, and an agency theory therefore cannot apply to them. *See Thomson-CSF*, 64 F.3d at 780 (holding that plaintiff "could not possibly be bound under an agency theory" when agreement was entered before plaintiff purchased company that signed agreement).

Veil piercing does not apply to these facts because Plaintiffs are not the parent corporation of BTI. *See id.* at 777-778 (veil piercing theory applies where "the corporate relationship between a parent and its subsidiary are sufficiently close as to justify piercing the corporate veil and holding one corporation legally accountable for the actions of the other").

Estoppel does not apply because Plaintiffs did not "knowingly exploit" Defendant's employment agreement in order to receive "direct benefits" for themselves "flowing directly from the agreement." *See Thomson-CSF*, 64 F.3d at 779 (no estoppel where plaintiff did not receive direct benefits from its own exploitation of an agreement that it did not sign, but merely received indirect benefits from the parties' performance of their agreement); *MAG Portfolio Consult, GMBH*, 268 F.3d at 61-62 (no estoppel where defendant had not demonstrated that plaintiffs "knowingly exploited" and thereby received a "direct benefit" from contract); *Veera v. Janssen*, No. 05 Civ. 2145, 2005 WL 1606054, at **4-6 (S.D.N.Y. Jul. 5, 2005) (no estoppel where agents, who signed agreement containing arbitration clause on company's behalf, did not personally exploit the agreement to receive a valuable asset and did not receive a clear benefit due to a relationship greater than their agency). Plaintiffs did not receive any personal benefits

flowing directly from Defendant's employment agreement with BTI and cannot be bound by the arbitration clause in that agreement based on an estoppel theory.

In sum, Plaintiffs did not expressly agree to arbitrate disputes with Defendant, and none of the five limited exceptions to the rule that a party cannot be forced to arbitrate in the absence of an express agreement apply. Accordingly, Plaintiffs are likely to succeed on the merits of their claim.

### D.  Balance of Hardships Tips Decidedly in Plaintiffs' Favor

Although the Court need not determine the issue of balance of hardships once it determines a likelihood that Plaintiffs will succeed on their claim, *see Castlewood*, 2006 WL 3026039, at *7 n.7, the balance of hardships clearly favors Plaintiffs. In the absence of a preliminary injunction, Plaintiffs will be forced to defend themselves in an arbitration to which they never agreed, to which they will ultimately be determined not to have been proper parties, and for which any award would be unenforceable. Moreover, the arbitration forum does not provide Plaintiffs with the same guaranteed procedural protections as do the courts, such as the entitlement to move to dismiss claims as a matter of law prior to a hearing. This difference is critical because Plaintiffs have several strong legal defenses to Defendant's claims (*see* Phillips Decl. Ex. A), and should be entitled to dismissal on the pleadings prior to a full-blown hearing.[1] Defendant, in contrast, would suffer little to no hardship if the injunction were granted because he would be able to continue his arbitration against BTI, and would have the option of bringing

---

[1] For example, Plaintiffs, as uncompensated Board members of a not-for-profit organization, are immune from liability for BTI's purported breach of defendant's employment contract pursuant to New York Not-for-Profit Law § 720(a), which provides in relevant part that "no person serving without compensation as a director, officer, or trustee of a corporation, association, organization or trust described in section 501(c)(3) of the United States internal revenue code shall be liable to any person other than such corporation, association, organization or trust based solely on his or her conduct in the execution of such office unless the conduct of such director, officer or trustee with respect to the person asserting liability

an action against Plaintiffs in court. Thus, the balance of hardships tips decidedly in Plaintiff's favor. *See Castlewood*, 2006 WL 3026039, at *7 n.7 (noting that balance of hardships tipped decidedly in plaintiff's favor where it would be forced to spend time and resources defending itself in an arbitration to which it did not consent); *Tellium*, 2004 WL 307238, at *8 (balance of hardships tipped decidedly in plaintiff's favor where it would be forced to expend time and resources to defend itself in an arbitration to which it may ultimately be determined not to have been a proper party, and for which any award would be unenforceable).

## IV.   CONCLUSION

As the Second Circuit has cautioned, "[a] court should be wary of imposing a contractual obligation to arbitrate on a non-contracting party." *Merrill Lynch Inv. Mgrs.*, 337 F.3d at 131. As there is absolutely no legal basis for imposing on Plaintiffs the obligation to arbitrate Defendant's claims, Plaintiffs respectfully request that their application for a preliminary injunction be granted.

Dated: New York, New York  
January 24, 2008

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP  
666 Fifth Avenue  
New York, NY 10103  
Telephone: (212) 506-5000

By: _____  
Renee B. Phillips

Attorneys for Plaintiffs.

---

constituted gross negligence or was intended to cause the resulting harm for the person asserting such liability."