UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GENE BROWN, KENNETH EDWARDS,
ALAN HANDELL, ROBERT HEISS,
CAROLINE JAISARIE, KRISTIN LEU,
KEVIN O'SULLIVAN, JUAN PAZMINO,
HARRY PRECOURT and ROSALIND WILSON,

                Plaintiffs,                08 CV 0857 (DC)

   - against –

PHILIP J. CALDARELLA,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### AFFIDAVIT OF PHILIP J. CALDARELLA IN OPPOSITION TO PLAINTIFFS' APPLICATION FOR PRELIMINARY INJUNCTION

State of New Jersey        }
                                    } ss.:
County of Bergen          }

      PHILIP J. CALDARELLA, being duly sworn, deposes and says:

      1.    I am the individually named Defendant in the above-captioned matter.

      2.    I respectfully submit this Affidavit in opposition to the "Application" by Plaintiffs for a preliminary injunction enjoining the "Arbitration" filed with the American Arbitration Association as Case No. 13-460-02030-07 from proceeding against those Respondents in the Arbitration who are named as Plaintiffs in this action.

      3.    On or about March 18, 2004, I entered into an "Employment Contract" with the Trustees of Binding Together, Inc. ("BTI"), a New York not-for-profit corporation. (A copy of the Employment Contract is annexed hereto as Exhibit "A".)

4. The introductory paragraph of the Employment Contract specifically states that the "Agreement [was] made . . . by and between The Trustees of [BTI] . . . and Philip J. Caldarella (hereafter referred to as "Affiant"). . . ."

5. The Employment Contract was drafted by the attorney for BTI and presented to Affiant in its present form and, at the time it was executed, Affiant believed that his agreement was with the Trustees, individually, as well as BTI.

6. Pursuant to the terms of the Employment Contract, the Trustees promised to employ me as President of BTI for a period of six (6) years from July 1, 2004 through June 30, 2010. (Exhibit "A", para. 2)

7. The Employment Contract also provides that the agreement made by the Trustees could only be terminated " . . . for cause if [BTI] shall determine, in good faith, that there has been continued neglect by [Affiant] of his duties hereunder or willful misconduct on [my] part in connection with the performance of [my] duties." (Exhibit "A", para. 9)

8. Paragraph 12 of the Employment Agreement (the "Arbitration Provision") provides that "[a]ny controversies arising out of or relating to this [Employment Contract] or the alleged breach thereof shall be settled by final and binding arbitration in New York City at the American Arbitration Association.

9. In the event that Affiant disputed his termination and commenced an arbitration to resolve that dispute, BTI was obligated to continue to pay Affiant's salary and to bear half the costs of the arbitration. (See, Exhibit "A", paras. 9 and 12)

10. Affiant vigorously disputes that there was "cause", as defined in paragraph 9 of the Employment Contract to justify his termination and that the Trustees acted in bad faith, and commenced the Arbitration based upon that belief and the requirements of the Arbitration Provision.

11. The Trustees have continuously failed and refused to pay Affiant's salary or one half of the costs of the arbitration as required by paragraphs 9 and 12 of the Employment Contract.

12. Subsequent to Affiant's termination, Affiant respectfully submits that the Trustees intentionally managed the affairs of BTI in such a manner as to render it incapable of continuing to operate independently and to sabotage merger discussions between BTI and another not-for-profit corporation that had expressed serious interest in such a merger.

13. Affiant also respectfully submits that, knowing full well that Affiant had devoted more than 20 years to the successful management of BTI, the Trustees actions described above were grossly negligent and taken with the specific intent to harm Affiant.

14. Affiant has been advised by counsel that, pursuant to the provisions of Section 720-a of the New York Not-For-Profit Law, the Trustees of BTI may be found personally liable if their actions if it be established that their actions were grossly negligent and/or taken with the specific intent to harm Affiant. (See, Declaration of Ronald I. Paltrowitz, Esq., dated February 6, 2008, [hereinafter referred to as "Paltrowitz Declaration"], para. 4).

15. Based upon Affiant's understanding of the provisions of Section 720-a and the fact that the Trustees were parties to the Employment Contract, Affiant commenced the Arbitration against both BTI and the Plaintiffs herein.

16. I have also been advised by counsel that Plaintiffs have based the Application solely on the premise that Plaintiffs are not parties to the Employment Contract and, therefore, not subject to the Arbitration Provision. (See, Paltrowitz Declaration, para. 5).

17. As noted in paragraph 5, *supra*, Affiant contends that the Trustees, in fact, are parties to the Employment Contract and, therefore, are obligated to arbitrate Affiant's claims against them.

18. Based upon the foregoing, Affiant respectfully submits that, whether or not the Plaintiffs are parties to the Employment Contract and, therefore, subject to the Arbitration Provision, is a controversy arising out of and relating to the Employment Contract that must be determined by the arbitrator and that the arbitrator's decision will be final and binding on all parties. (See, Paltrowitz Declaration, para. 9).

- 4 -

Wherefore, Affiant respectfully prays that this Court deny Plaintiffs' application for a preliminary injunction and direct that Plaintiffs proceed to arbitration and grant Defendant such other and further relief as the Court may deem appropriate.

/s/ Philip J. Caldarella

Philip J. Caldarella

Sworn to before me this
 2  day of February 2008.


/s/ Jeryl Kronish
_____
Notary Public of New Jersey
Bergen County
My Commission Expires 1/25/2011

EMPLOYMENT AGREEMENT

AGREEMENT made this 18th day of March 2004 by and between The Trustees of Binding Together Incorporated, a corporation having its principal place of business at 200 Hudson Street, 10th Floor, New York, New York 10013 (hereafter "BTI" or the "Corporation" and Philip J. Caldarella, an individual and Executive Director of the Corporation, residing at 555 Adirondack Court, Mahwah, NJ 07430 (hereafter "Caldarella").

WITNESSETH:

WHEREAS, Caldarella has been employed by the Corporation since July 1987 and has devoted his best and full efforts to the Corporation's development and success since the inception of his employment by the Corporation; and

WHEREAS, Caldarella desires to secure his position in the Corporation with due regard for the fact that it is a Not-for-Profit Corporation; and

WHEREAS, the Trustees also desire to protect the Corporation's best interests by obligating Caldarella for a term of years under an employment agreement.

WHEREAS, Caldarella and the Trustees previously entered into an agreement that by its terms expires June 30, 2004 and now desire to continue their mutually beneficial relationship by entering into a new agreement.

NOW, THEREFORE, the parties hereto, intending to be bound, agree as fof lows;

1.   Employment
The Corporation hereby employs Caldarella and Caldarella hereby accepts employment upon the terms arid conditions hereinafter set forth.

2.   Term
Caldarella's term of employment hereunder shall be for 6 years, commencing from July 1, 2004, and ending on June 30, 2010, subject however, to the right of either party to terminate his employment as hereinafter provided. Unless earlier terminated, the parties hereto shall discuss a renewal or extension of the term of employment commencing no later than 90 days prior to the expiration of this Agreement. Nothing herein contained shall be deemed to obligate the parties hereto to renew or extend this Agreement.

2.   Duties and Title
Caldarella is engaged to serve as Executive Director and shall be responsible to, and report to the Trustees of the Corporation. His responsibilities shall include maximizing enrollment of trainees and management of BTI's income an~ expenses to assure BTI's continued success. Caldarella shall have general supervision over personnel of the Corporation relevant to the performance of his responsibilities. At all times Caldarella is subject to the supervision of the Trustees and shall devote all of his exclusive business time and best efforts, skills and abilities to the performance of

his exclusive business time and best efforts, skills, and abilities to the performance of his responsibilities.

    4.    Remuneration

a) Effective from July 1, 2004, with the first year of this Agreement, the Corporation shall pay Caldarella a base salary in the amount of $152,218 per year.

b) Effective July 1, 2005, the Corporation shall increase the base salary by five (5%) percent to $159,829. Effective July 1, 2006, the Corporation shall increase the base salary by five (5%) percent to $167,820. Effective~ July 1, 2007, the Corporation shall increase the base salary by five (5%) percent to $176,211. Effective July 1, 2008, the Corporation shall increase the base salary by five (5%) percent to $185,022. Effective July 1, 2009, the Corporation shall increase the base salary by five (5%) percent to $194,273.

c) The Corporation, in its discretion, will provide Caldarella with a bonus each year, which will reflect the Corporation's performance under Caldarella's management. The amount of the bonus will be determined by the Executive Director Incentive Plan, which will be revised annually to reflect performance expectations for that year.

    5.    Expenses

The Corporation will reimburse Caldarella on a monthly basis for all business related expenses incurred by him in the course of the performance of his duties, upon the presentation of appropriate vouchers, receipts, etc.

    6.    Fringe Benefits

a) The Corporation shall provide Caldarella with benefits that are no less than any other employee receives under the benefit programs of the Corporation.

b) The Corporation shall provide Caldarella with a vehicle in order for him to carry out his duties and responsibilities as the Corporation's Executive Director. The Corporation shall be responsible for the maintenance and upkeep of the vehicle.

c) Nothing in this article shall be construed to mean that the Corporation may not extend benefits to Caldarella which are greater than those extended to the Corporation's employees generally.

    V.    Vacation

Caldarella shall be entitled to five (5) weeks of paid vacation (i.e., :25 business days) during each calendar year of the tern, of this Agreement, to be governed by the Corporation's Employee Handbook/Policy Manual.

8.  Disability

After exhausting his sick days entitlement for the calendar year, in the event Caldarella shall be unable to perform his normal duties and responsibilities in any period of up to one (1) month by reason of illness or incapacity, his compensation and benefits shall remain intact,

9, Termination With Cause

The Corporation may elect to terminate this Agreement for cause if it shall determine, in good faith, that there has been continued neglect by Caldarella of his duties hereunder or willful misconduct on his part in connection with the performance of such duties. Upon such termination, all obligations of the Corporation hereunder shall forthwith cease and come to an end. If Caldarella disputes such termination, then afi of the Corporation's obligations hereunder shall continue until there is a final ruling on the merits of their dispute as provided for in paragraph 12 of this Agreement.

10.  Restrictive Covenant

During the term of this Agreement, Caldarella shall not, for his own account or as a partner, director, stockholder, officer or employee of any other corporation, partnership, sole-proprietorship, or business entity engage in any business competitive with the business of the Corporation, and he shall give his best efforts on a full time basis to promote the best interest of the Corporation. Further, Caldarella shall keep confidential during the term of this Agreement, all information which may be revealed or available to him in the course of his employment, including without limitation, information relating to the BTI's needs and requirements regarding any actual and potential sources of enrollees, job placement facilities or other areas of critical business concerns, when such disclosures may be in any way prejudicial to the interests of the Bit, except to the extent that such disclosure may be necessary or appropriate to the effective and efficient discharge of his duties to the Corporation. Caldarella agrees that in the event he resigns from further employment by the Corporation during the term of this agreement or at the expiration thereof, he will not directly or indirectly compete with the Corporation by forming or joining another competitive entity within one (1) year of such resignation. He further agrees to notify the Corporation of his intention to resign 90 days prior to the effective termination date.

11.  Death During Employment

BTI shall provide Caldarella with term life insurance coverage so that if he should die during the term of this Agreement, his estate shall receive two (2) years of his base salary compensation, in accordance with the Corporation's Employee Handbook/Policy Manual

12, Arbitration

Any controversy arising out of or relating to this Agreement or the alleged breach, thereof, shall be settled by final and binding arbitration in New York City at the American Arbitration Association, the costs of which shall be borne equally by the parties. in the event the dispute concerns termination with cause, the Corporation may request expedited arbitration (a hearing within seven (7) days); the arbitrator shall be

required to complete the hearing in one (1) day, and issue a ruling within 7 days of the hearing. Judgment upon the award of the arbitrator(s) may be entered in any court having jurisdiction.

      13.    Notices

Any notice required or permitted to be given by either party to the other shall be deemed sufficiently given when in writing and sent by certified or registered mail, return receipt requested, addressed to the other as set forth at the head of this Agreement or at such other address of which notice shall have similarly been given. Nothing contained in this paragraph shall be deemed to require such notice with respect to routine communications between the parties in the performance of this Agreement.

      14.    Successors

In the event that the Corporation is merged, or becomes affiliated, this Agreement shall remain binding on the Corporation's successor, or the new entity, and Caldarella. In such an event, all rights, duties, benefits, and responsibilities of this Agreement will be deemed transferred to the Corporation's Successor or new entity.

      15.    Severance Benefit

In the event that during the term of this agreement the Corporation closes down and/or dissolves, or is sold or merged, or relocates, and any of the foregoing happenings results in the cessation of Caldarella's employment, then the Corporation will provide him with severance pay for 12 months of salary. In the event that Caldarella's employment is not renewed/extended, and he is thereafter terminated, he shall also be entitled to the severance pay provision of this paragraph.

      16. Whole Agreement

This document contains the entire Agreement between the parties and may not be changed orally and no amendment thereof shall be valid or binding unless the same is made in writing arid signed by each of the parties hereto.

      IN WITNESS WHEREOF, the parties hereto have executed this Agreement this <u>18th</u> day of March 2004.

3inding Together Incorporated            Philip J. Caldarella


By:   <u>/s/ Barbara Small</u>              <u>/s/ Philip J. Caldarella</u>