UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GENE BROWN, KENNETH EDWARDS,
ALAN HANDELL, ROBERT HEISS,
CAROLINE JAISARIE, KRISTIN LEU, KEVIN
O'SULLIVAN, JUAN PAZMINO, HARRY
PRECOURT AND ROSALIND WILSON,

                    Plaintiffs,

       -against-

PHILIP J. CALDARELLA,

                 Defendant.

Case No. 08-CV-0857 (DLC)

ORAL ARGUMENT REQUESTED

**REPLY MEMORANDUM OF LAW
IN SUPPORT OF APPLICATION
FOR PRELIMINARY INJUNCTION**

Renée B. Phillips
ORRICK, HERRINGTON & SUTCLIFFE LLP
666 Fifth Avenue
New York, New York 10103
(212) 506-5000

Attorneys for Plaintiffs

# TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT ................................................................ 1

II.    ARGUMENT................................................................................................ 1

    A.    It Is This Court's Province To Determine Whether Plaintiffs Agreed To Arbitrate ........................................................................................ 1

        1.    There Is A Presumption Against Arbitrability........................................... 1

        2.    Plaintiffs Did Not Agree To Arbitrate Any Isssue With Defendant, Let Alone The Question Of Arbitrability...................................... 3

    B.    None of The Five Theories To Bind Nonsignatories To An Arbitration Agreement Applies to Plaintiffs........................................... 7

    C.    Plaintiffs Have Demonstrated All of the Requirements for Injunctive Relief................................................................................. 10

III.    CONCLUSION........................................................................................ 10

## I.    PRELIMINARY STATEMENT

Plaintiffs' application for injunctive relief is founded upon their indisputable claim that they <u>never signed an agreement to arbitrate</u> with Defendant, and cannot be required to give up the legal protections afforded by the court system in the absence of <u>clear and unmistakable</u> evidence that they agreed to do so under well-settled law.  Defendant's purported clear and unmistakable evidence of intent, which consists of nothing more than a clause in an employment agreement that was not negotiated, drafted, or signed by Plaintiffs at all, let alone in their personal capacities, is wholly insufficient to demonstrate such intent and to defeat the well-established inference of *per se* irreparable harm where a party alleges that he/she is being compelled to arbitrate in the absence of an agreement to do so.  For the reasons described below and those stated in Plaintiffs' opening brief, Plaintiffs' application for a preliminary injunction should be granted.

## II.    ARGUMENT

### A.    It Is This Court's Province To Determine Whether Plaintiffs Agreed To Arbitrate

Defendant devotes much of his brief to arguing that an arbitrator, not this Court, should decide the question of whether Plaintiffs agreed to arbitrate with Defendant.  Defendant misstates the applicable law and his argument is a classic red-herring.

#### 1.    There Is A Presumption Against Arbitrability

Contrary to Defendant's argument that there is a presumption of arbitrability in this case, precisely the opposite is true.  It is well-settled that there is a presumption <u>against</u> arbitrability when, as here, the parties dispute whether they entered an agreement to arbitrate.  Indeed, the U.S. Supreme Court has made clear that, "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided <u>by the court</u>,

not the arbitrator." *AT&T Techs., Inc. v. Commc'ns. Workers*, 475 U.S. 643, 649-50 (1986) (emphasis added). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." *Id.* (citations omitted). Courts may not defer questions of arbitrability to an arbitrator unless there is "clear and unmistakable" evidence that the opposing party agreed to submit the question of arbitrability to the arbitrator. *See AT&T Techs.*, 475 U.S. at 649-50.

In *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995), the U.S. Supreme Court specifically faced the issue of whether a court or an arbitrator should decide whether parties agreed to arbitrate. The Court made clear that there is a presumption against arbitrability of this question, and any silence or ambiguity on the issue must be interpreted in favor of the court deciding the question. *Id.* The Court stated that to do otherwise "might too often force unwilling parties to arbitrate a matter they reasonably thought a judge, not an arbitrator, would decide." *Id.* Here, just as in *First Options*, Plaintiffs claim that they never entered an agreement to arbitrate with Defendant. Accordingly, there is a presumption against arbitrability under well-settled law. *Id. See also Masefield v. Colonial Oil Indus., Inc.*, No. 05 Civ. 2231, 2005 WL 911770, at *2 (S.D.N.Y. Apr. 18, 2005) (arbitrability to be decided by court, not arbitrator, despite broad arbitration agreement, where plaintiffs did not sign the agreement, and the agreement did not, therefore, reveal plaintiffs' desire to arbitrate arbitrability with defendant); *Masefield v. Colonial Oil Indus., Inc.*, No. 05 Civ. 2231, 2005 WL 957344, at *1 (S.D.N.Y. Apr. 26, 2005) (same); *Bank of Am., N.A. v. Diamond State Ins. Co.*, No. 01 Civ. 0645, 2001 WL 1029410, at *1-2 (S.D.N.Y. Sept. 7, 2001), *aff'd* 38 Fed. Appx. 687 (2d Cir.

2002) ("the threshold issue of consent must be adjudicated because the sole authority of an arbitral body emanates from the consent of the parties to its authority").[1]

### 2.    Plaintiffs Did Not Agree To Arbitrate *Any* Issue With Defendant, Let Alone The Question Of Arbitrability

"When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally...should apply ordinary state law principles that govern the formation of contracts," with the added requirement that the evidence of such agreement must be "clear and unmistakable." *First Options*, 514 U.S. at 944-45. In New York, it is well-established that the question of whether directors or officers are themselves party to a contract (including an agreement to arbitrate) rests upon whether the individuals signed the contracts in their personal capacities. *See Salzman Sign Co. v. Beck*, 217 N.Y.S.2d 55 (1961) (corporate

---

[1]     Defendant's opposition fails to cite any cases in which a party was required to arbitrate the question of whether he agreed to arbitration. Rather, in support of his inaccurate proposition, he cites cases in which parties who agreed to arbitrate were disputing the scope of the agreement. *See Mehler v. Terminix Int'l Co.*, 205 F.3d 44, 47 (2d Cir. 2000) (parties agreed to arbitrate under broad arbitration clause; as a result, there was a presumption that asserted dispute fell within that agreement); *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir. 1998) (same); *Worldcrisa Corp. v. Armstrong*, 129 F.3d 71, 74-76 (2d Cir. 1997) (holding that party that agreed to arbitrate pursuant to broad agreement is subject to presumption of arbitrability, but noting that non-signatory to agreement would not be bound by presumption); *Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 63 (2d Cir. 1983) (party who agreed to arbitration but just disputed scope of agreement compelled to arbitrate upon court's determination that dispute fell within scope of agreement); *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*, 252 F.2d 218, 223 (2d Cir. 2001) (issue limited to scope of agreement). These cases are inapposite because they do not address the threshold question of who determines whether parties entered into an arbitration agreement to begin with. *See First Options*, 514 U.S. at 945 (question of whether parties agreed to arbitrate is different from question of scope and different presumptions therefore apply); *Monisoff v. Am. Eagle Investments, Inc.*, 927 F. Supp. 137, 138 (S.D.N.Y. 1996), *aff'd* 104 F.3d 356 (2d Cir. 1996) (threshold issue of whether parties agreed to arbitrate disputes is "separate and independent" from issues of scope; the former is "unaffected by any policy favoring arbitration"). As described above, in determining the threshold issue, there is a presumption against arbitrability.

The one case that Defendant cites that is even arguably analogous to this one, *Nichols v. Washington Mut. Bank*, No. 07-CV-3216, 2007 WL 4198252, at *7 (S.D.N.Y. Nov. 21, 2007) fully supports Plaintiffs' arguments. In that case, as here, the arbitration agreement incorporated the AAA's broad rules, but the court nevertheless determined that it was for a court, not an arbitrator, to decide whether the plaintiff agreed in the first instance to arbitrate with the defendants.

Nor does *Wilson v. Subway Sandwiches Shops, Inc.*, 823 F. Supp. 194, 198 (S.D.N.Y. 1993) support Defendant's position. In that case, the court determined that a dispute was not arbitrable despite

---

officer who signed contract but not in personal capacity could not be bound by it: it is a "settled rule that an agent for a disclosed principal 'will not be personally bound unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal'").

In *Salzman*, the contract at issue stated in its body that the officer signing on behalf of the corporation personally guaranteed the contract. 217 N.Y.S.2d at 56. The officer signed the contract "Irving Beck pres L.S." *Id.* Plaintiff sued both the corporation and the officer for breach of contract, and the Court of Appeals was faced with the question of whether the corporate officer could be held personally liable under the contract. *Id.* The court held that he could not. *Id.* at 57-58. While recognizing that a "plausible argument may be made that a corporate officer who signs his name to such a contract is presumed to have read and understood it and so should be considered bound by its plain language," it held that the "opposing policy argument" was "strong," and held that the officer could not be personally bound by the contract unless he signed the contact in his <u>individual</u> capacity. *Id.* at 56-58.    The Court of Appeals explained its rationale as follows:

> In modern times most commercial business is done between corporations, everyone in business knows that an individual stockholder or officer is not liable for his corporation's engagements unless he signs individually, and where individual responsibility is demanded the nearly universal practice is that the officer signs twice once as an officer and again as an individual. There is great danger in allowing a single sentence in a long contract to bind individually a person who signs only as a corporate officer. In many situations the signing officer holds little or no stock and if the language of the agreement makes him individually liable his estate may be stuck for a very large obligation which he never dreamed of assuming.

*Id.* at 57-58.

---

the broad nature of the agreement, recognizing that it is "critical that the parties have explicitly agreed to arbitrate their disputes before such arbitration is compelled by a court." *Id.*

*Salzman* has since been applied in a host of cases to protect individual officers or directors from being compelled to arbitrate disputes when they have not signed arbitration agreements in their individual capacities. *See, e.g., Metamorphosis Constr. Corp. v. Gleckel*, 668 N.Y.S.2d 594 (1st Dep't 1998) (officer of corporation could not be compelled to arbitrate where he signed agreement to arbitrate in his official capacity); *Application of Kummerfeld*, 588 N.Y.S.2d 154 (1st Dep't 1992), *leave to appeal denied*, 601 N.Y.S.2d 570 (1993) ("individual who in a representative capacity signs an agreement containing an arbitration clause cannot be compelled to arbitrate"); *Johnston v. Silverman*, 561 N.Y.S.2d 788 (1st Dep't 1990) (individuals were not parties to arbitration agreement despite fact that they signed agreement, where they signed only in their representative capacities); *Application of Jeremov*, 517 N.Y.S.2d 496 (1st Dep't 1987) (president of corporation could not be compelled to arbitrate as a matter of law when he signed contract containing arbitration clause but only in his capacity as president of the corporation). *See also In the Matter of the Arbitration between Marlene Indus., Corp. and Carnac Textiles, Inc.*, 45 N.Y.2d 327, 333-34 (1978) ("by agreeing to arbitrate a party waives in large part many of his normal rights under the procedural and substantive law of the State, and it would be unfair to infer such a significant waiver on the basis of anything less than a clear indication of intent").

Here, the facts are even more compelling than in the cases cited, for Plaintiffs never signed Defendant's employment agreement in <u>any</u> capacity, let alone in their individual capacities. None of the Plaintiffs are even mentioned by name in the agreement; they are only mentioned in their official capacity as trustees. None of the Plaintiffs played any role in negotiating or drafting the agreement. *See* Affidavits of Gene Brown, Kenneth Edwards, Alan Handell, Robert Heiss, Caroline Jaisarie, Kristin Leu, Kevin O'Sullivan, Juan Pazmino, Harry

Precourt and Rosalind V. Wilson. Six of the ten Plaintiffs were not on the Board of BTI at the time the contract was entered, a fact Defendant fails to address in his opposition. *See* Brown, Jaisarie, Leu, Pazmino, Precourt, and Wilson Affs. The arbitration clause does not state that any of the individual Plaintiffs would be personally bound by it or that they would be bound to arbitrate disputes as to arbitrability; but even if it had, that would clearly be insufficient under *Salzman* and its progeny because Plaintiffs did not sign the agreement in their personal capacities. In any event, each of the Plaintiffs unqualifiedly attests in their affidavits that they never expressed any intent to be bound by Defendant's employment agreement. *See* Brown, Edwards, Handell, Heiss, Jaisarie, Leu, O'Sullivan, Pazmino, Precourt and Wilson Affs. Thus, there is no "clear and unmistakable" evidence that Plaintiffs agreed to arbitrate at all, let alone to arbitrate the question of arbitrability.[2]

Indeed, the Second Circuit has refused to enforce an arbitration agreement against a non-signatory when faced with allegations similar to those raised by Defendant. In *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 775-76 (2d Cir. 1995), a party seeking to compel arbitration before the American Arbitration Association argued that Thomson, although a non-signatory to the agreement, should nevertheless be compelled to arbitrate because (1) Thomson fell within the definition of the "parties" in the beginning of the agreement; (2) Thomson

---

[2]    Defendant, in arguing that Plaintiffs agreed to be individually bound by his employment agreement with BTI points to just two facts. First, he points to the language in the first paragraph of the employment agreement stating "AGREEMENT...by and between The Trustees of Binding Together Incorporated, a corporation...(hereafter 'BTI' or the 'Corporation') and Philip J. Caldarella, an individual and Executive Director of the Corporation...(hereafter 'Caldarella')." As explained above, however, the purported mention of a director or officer in the text of an agreement is insufficient to bind him/her in the absence of a personal signature. *See, e.g., Salzman*, 217 N.Y.S.2d at 57 (officer may not be bound by clause naming him in contract in absence of his signature in his individual capacity). Second, Defendant points to his purported "belief" that his agreement was with the Trustees individually; however, Defendant's belief, unsupported by any facts other than the agreement itself, is insufficient to create an issue of fact. *See Application of Jeremov*, 517 N.Y.S.2d at 497 (where officer did not sign in individual capacity, "conflicting allegations as to the real intent of the parties...are insufficient to create a triable issue of fact").

exercised a high degree of control over the corporation; and (3) the claims against Thomson were interrelated with the issues to be arbitrated. *Id.* at 780. The Second Circuit rejected these arguments, holding that even if all of them were true, they would be insufficient to bind Thomson to the arbitration clause at issue. Rather, as a non-signatory, Thomson could only be bound if it fell within one of the five well-established exceptions for binding nonsignatories to arbitration agreements. *Id.* The Second Circuit explained that to hold otherwise would "dilute the safeguards afforded to a nonsignatory." *Id.*

Similarly, here, even if the Court were to find that Plaintiffs as individuals fell within the definition of "parties" to Defendant's employment agreement, which Plaintiffs dispute,[3] and also were to find that Plaintiffs exercised a high degree of control over BTI and the issues were interrelated, this would be insufficient to bind Plaintiffs to Defendant's arbitration clause; rather, Plaintiffs may only be bound upon Defendant meeting his burden to demonstrate that Plaintiffs fall within one of the five limited exceptions for binding non-signatories. This Defendant has failed to do.

### B.   None of The Five Theories To Bind Nonsignatories To An Arbitration Agreement Applies to Plaintiffs

As stated in Plaintiffs' moving brief, there are five theories under which nonsignatories may be bound to the arbitration agreements of others:  (1) incorporation by reference; (2) assumption; (3) agency; (4) veil piercing/alter ego; and (5) estoppel. *See Thomson-CSF,* 64 F.3d at 776. Defendant does not deny that "4 1/2" of the five theories do not apply here: specifically, incorporation by reference, assumption, agency, veil piercing, or estoppel. Rather, Defendant

---

[3]    The introductory paragraph cited by Defendant only defines two parties to the agreement, BTI and Caldarella. Moreover, Caldarella is the only party identified as an "individual;" the Trustees are not referred to by name, nor are they referred to as "individuals." In addition, the agreement discusses what "either party" may do, further indicating only two parties. *See* Agreement at ¶¶ 2, 13.

rests his argument on the remaining "1/2" theory, the "alter-ego" theory, which he claims is distinct from the veil piercing theory and applies in this case. Defendant's argument is baseless.

As an initial matter, Defendant is not only incorrect, but misleading, in his assertion that the alter ego analysis is somehow different from the veil piercing analysis. Indeed, the language Defendant quotes at page 6 of his brief consists of nothing more than the traditional veil piercing analysis that applies to a parent/subsidiary relationship, as the very case he cites makes clear:

> Under the familiar test of *Lowendahl v. Baltimore & Ohio R.R.*, 247 A.D. 144, 287 N.Y.S.62 (1st Dep't), *aff'd* 272 N.Y. 360, 6 N.E.2d 56 (1936), **the corporate veil will be pierced and a parent held liable for the debts of its subsidiary** if the following elements are established: (1) control amounting to complete domination with respect to the transaction attacked; (2) use of such control to perpetuate a fraud or wrong, including violation of a positive legal duty; and (3) the control and breach of duty must proximately cause the injury complained of.

*Carte Blanche (Singapore) Pte., Ltd. v. Diners Club Int'l, Inc.*, 758 F. Supp. 908 (S.D.N.Y. 1991) (citation omitted) (emphasis added). *See also Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131,138 (2d Cir. 1991) ("the three-factor rule in New York [to pierce the corporate veil] and the alter ego theory...are indistinguishable"); *Morris v. N.Y.S. Dep't of Taxation and Finance*, 603 N.Y.S.2d 807 (1993) (citing the current standard for veil piercing); *Thrift Drug, Inc. v. Universal Prescription Admin.*, 131 F.3d 95, 97 (2d Cir. 1997) (same).

With respect to the first element of the alter ego/veil piercing analysis, "complete domination," courts tend to look at the following factors:

> (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arm's length; (8) whether the corporations are treated as separate profit centers; (9) payment or guarantee of the corporations debts by the dominating entity; and (10) intermingling of property between the entities.

*MAG Portfolio Consult, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 63 (2d Cir. 2001).
*See also Tellium, Inc., v. Corning Inc.*, No. 03 Civ. 8487, 2004 WL 307238, at *7 (S.D.N.Y. Feb.
13, 2004). Even a cursory review of these factors reveals that they are simply not applicable to
volunteer Board of Director members who have no ownership interest in a corporation.[4]

Defendant contends that this element is met by mere virtue of the fact that Plaintiffs are
current or former trustees of BTI, as this means that Plaintiffs "by definition completely control
the actions of BTI." (Def. Brief at 6.) Of course, far more is required to demonstrate "complete
domination." *See MAG Portfolio*, 268 F.3d at 63; *Tellium*, 2004 WL 307238, at *7. If
Defendant's analysis were correct, all members of corporate boards would fall within the
"complete domination" prong of the alter ego analysis, an absurd result.

Moreover, Defendant fails to demonstrate that Plaintiffs committed the type of wrongful
conduct under the second prong of the alter ego analysis that would justify veil piercing. As the
Court of Appeals has repeatedly held, to pierce the corporate veil a party must demonstrate that
the alleged alter ego misused the corporate form for his personal ends so as to commit a wrong or
injustice. *See Morris v. N.Y.S. Dep't of Taxation and Finance*, 603 N.Y.S.2d at 811 (refusing to
pierce corporate veil where respondents failed to meet their burden to demonstrate the "critical"
point that the petitioner misused the corporate form for his "personal ends"); *Port Chester Elec.
Constr. Corp. v. Atlas*, 389 N.Y.S.2d 327, 331 (1976) ("the determinative factor is whether the
corporation is a dummy for its individual stockholders who are in reality carrying on the business
in their personal capacities for purely personal rather than corporate ends").

---

[4]     Nevertheless, to resolve any potential doubts on this issue, Plaintiffs submit the affidavit of
Robert Heiss, current Chairman of the Board of Directors of BTI, who attests that BTI's Board observes
corporate formalities, including holding regular Board meetings and recording minutes; the Board has not
transferred funds from BTI to themselves or to any sister or parent corporation of BTI to limit the
capitalization of BTI; the Board has not intermingled their funds with those of BTI nor have they shared
property or office space with BTI; and the Board has not personally paid or guaranteed BTI's debts.

Here, Defendant has not alleged, nor can he, that Plaintiffs terminated his employment for their own personal gain. For this reason as well, he cannot demonstrate that the alter ego/veil piercing theory applies.

### C.    Plaintiffs Have Demonstrated All of the Requirements for Injunctive Relief

As fully laid out in Plaintiffs' opening brief, the standards for preliminary injunctive relief, i.e., irreparable harm, likelihood of success on the merits, and a balance of hardships tipping decidedly in Plaintiffs' favor, have all been met. Not only does Defendant fail to cite any cases in support of his argument that Plaintiffs would not suffer irreparable harm in the absence of the requested relief, the argument directly contradicts a wealth of case law addressing this very issue. *See, e.g.*, Plaintiffs' Br. at 3-4. Finally, Defendant has made no claim that he would suffer any sort of hardship if the requested relief is granted.

### III.    CONCLUSION

As there is absolutely no basis for finding that any of the Plaintiffs personally agreed to be bound by Defendant's employment agreement, including the arbitration provision therein, Plaintiffs respectfully request that their application for preliminary injunctive relief be granted.

Dated: New York, New York
       February 13, 2008

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP
666 Fifth Avenue
New York, NY  10103
Telephone: (212) 506-5000

By: _____
     Renee B. Phillips

Attorneys for Plaintiffs.