UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                          :
GENE BROWN, KENNETH EDWARDS, ALAN     :
HANDELL, ROBERT HEISS, CAROLINE      :
JAIARIE, KRISTIN LEU, KEVIN          :
O'SULLIVAN, JUAN PAZMINO, HARRY     :        08 CIV. 857 (DLC)
PRECOURT and ROSALIND WILSON,      :
                                          :          MEMORANDUM
                 Plaintiffs,     :     OPINION & ORDER
                                          :
        -v-                      :
                                          :
PHILIP J. CALDARELLA,           :
                                          :
                Defendant.      :
                                          :
---------------------------------------- X


Appearances:

For Plaintiffs:
Renée B. Phillips
Orrick, Herrington & Sutcliffe LLP
666 Fifth Avenue
New York, New York 10103

For Defendant:
Ronald I. Paltrowitz, Esq.
24 Juniper Ridge Drive
Danbury, Connecticut 06811


DENISE COTE, District Judge:


    Plaintiffs have moved, by order to show cause, for a

preliminary injunction to stay arbitration.  For the following

reasons, the motion is denied.

BACKGROUND

The relevant facts are undisputed.  Plaintiffs are current or former trustees of Binding Together, Inc. ("BTI"), a New York not-for-profit corporation.  Defendant Philip Caldarella ("Caldarella") served as the Executive Director of BTI until June 2007.  In August 2007, pursuant to a provision in Caldarella's employment contract, the plaintiffs voted to approve the termination of Caldarella's employment for cause. The contract had been entered into on March 18, 2004, and purported to be between Caldarella and "The Trustees" of BTI. It was signed by Caldarella and by the Chairperson of the Board of Directors at that time, Barbara Small.[1]

Invoking the arbitration clause contained in his employment contract, Caldarella commenced an arbitration action against BTI and the individual trustees in September 2007 to challenge the termination of his employment.  BTI does not challenge the jurisdiction of the arbitrator.  But, the current and former trustees contend that they were not parties to the employment contract and, therefore, never agreed to arbitrate the defendant's claims.  They filed this action on January 24, 2008 seeking injunctive relief.

---

[1] Plaintiffs stated in their Answer in the arbitration proceeding that "Trustees of the Corporation" refers to and is used interchangeably with the "Board of Directors."

DISCUSSION

    "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  AT&T Techs., Inc. v. Commc'ns. Workers of Am., 475 U.S. 643, 648 (1986) (citation omitted). "Thus, while there is a strong and liberal federal policy favoring arbitration agreements, such agreements must not be so broadly construed as to encompass claims and parties that were not intended by the original contract."  Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995) (citation omitted).  "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." AT&T Techs., Inc., 475 U.S. at 649.

    In determining which parties are bound by an arbitration agreement, a court should apply "ordinary principles of contract and agency."  McAllister Bros., Inc. v. A & S Transp. Co., 621 F.2d 519, 524 (2d Cir. 1980).  Once the court determines, however, that an arbitration agreement exists between the parties, and "[w]here the scope of the agreement is unlimited, issues addressed to the liability of the parties . . . , rather than the agreement to arbitrate, are to be determined by the arbitrator."  Maria Victoria Naviera, S.A. v. Cementos Del Valle, S.A., 759 F.2d 1027, 1031 (2d Cir. 1985).

Plaintiffs assert that, because each of them did not individually sign the employment contract with Caldarella, they are non-signatories to the arbitration agreement and, as such, may only be compelled to arbitrate if one of the five theories recognized by the Second Circuit for binding non-signatories is shown to apply.  See Thomson-CSF, S.A., 64 F.3d at 776. Plaintiffs argue that none of the recognized exceptions applies to this case and, furthermore, that they cannot be compelled to arbitrate when they never assumed personal liability under the contract.

Typically, the question of whether a corporate director or officer has been made a party to a contract arises in cases where the individual signed the contract but the text of the agreement names the corporation -- and not the director or officer -- as a party.  The counter-party then seeks to sue the director or officer based on his signature, while the director or officer argues that he merely signed the contract on behalf of his principal, the corporation.  As plaintiffs point out, courts applying New York law in such cases have invariably found that the director or officer is not bound as a party to the contract unless the contract sufficiently indicates that he signed the agreement in his individual capacity.[2]

---

[2] The parties agree that New York law governs their dispute.

For example, in Salzman Sign Co. v. Beck, 10 N.Y.2d 63 (1961), the plaintiff sought to recover against the president of a corporation for breach of a purchase contract.  The contract was made between the corporation and the plaintiff, and the president had signed the contract on behalf of the corporation by writing "pres" next to his signature.  The plaintiff, however, cited to a clause in the contract stating that any officer signing on behalf of the corporation personally guaranteed the payments required under the agreement.  The court concluded that this clause was insufficient to bind the president as guarantor.  In reaching that conclusion, the court explained that "everyone knows that an individual stockholder or officer is not liable for his corporation's engagements unless he signs individually, and where individual responsibility is demanded the nearly universal practice is that the officer signs twice once as an officer and again as an individual."  Id. at 67.

Similarly, in Application of Jevremov, 517 N.Y.S.2d 496 (App. Div. 1st Dep't 1987), a property owner had entered into a remodeling contract, which his counsel had redrafted to name as co-contractors a corporation and its president Branislav Jevremov.  The contract provided two signature lines, one for the corporation "By: Branislav Jevremov, President" and another simply for "Branislav Jevremov."  The president signed only on

the corporation's signature line and left the other line blank.
Following a dispute, the owner demanded arbitration against the
president personally based on an arbitration provision contained
in the original contract.  The court determined that the
president could not be compelled to arbitrate because the fact
that the president left the individual signature line unfilled
"contrasted with his willingness to sign as president" of the
corporation, and evidenced "a clearly expressed refusal on the
part of Jevremov to be bound in his individual capacity to
anything contained in the agreement, including the arbitration
clause."  Id. at 177.

Plaintiffs also rely on Veera v. Janssen, No. 05 Civ. 2145,
2005 WL 1606054, *3 (S.D.N.Y. July 5, 2005).  Veera, like the
New York cases relied upon by the plaintiffs, is inapposite,
because the contracts at issue provided in their introductory
sentences that the agreements were "by and between" a
corporation and its counter-party.  Id. at *4.  The court,
therefore, refused to bind the officers who had signed the
agreements on their corporation's behalf to the contracts'
arbitration clauses absent "any evidence that it was the
intention of [the officers] to substitute or superadd their
personal liability for, or to, that of their principal."  Id.
Indeed, in Veera the corporation was deemed the signatory and
the officers -- who actually signed the agreements -- were

treated as non-signatories.  As non-signatories, the officers

could only be bound to the contracts' arbitration clauses if one

of the five exceptions recognized by the Second Circuit applied,

and the court concluded that none -- including the agency theory

-- did.

The other cases to which plaintiffs cite likewise involved

contracts that were, by their terms, made with a corporation and

merely signed by an officer acting on the corporation's behalf.

See, e.g., Application of Kummerfeld, 588 N.Y.S.2d 154 (App.

Div. 1st Dep't 1992).  These cases illustrate that the parties

to a contract are not determined by the signature line alone but

by the text of the contract itself.  Plaintiffs' strong reliance

on these cases is, therefore, misplaced.  After all, here the

contract recites in its very first sentence that it was made "by

and between The Trustees of Binding Together Incorporated, . . .

and Philip J. Caldarella."  The contract refers to "the

Trustees" in several other clauses, as well, including one

explaining that "Caldarella and the Trustees previously entered

into an agreement . . . and now desire to continue their

mutually beneficial relationship."  When referring to BTI alone,

the contract uses "Corporation."  Thus, in this case, Caldarella

is not seeking to bind the trustees under the contract of their

principal, BTI, but on their own contract.

Plaintiffs do not claim that they were unaware of the contract's existence, but only that each of them did not individually sign the agreement, did not play any role in its negotiation or drafting, and did not personally agree to be bound under the agreement.  Given the plain language of the contract -- which was not drafted by Caldarella or his counsel -- and the single signature line for the employer,[3] it is reasonable to infer that the Chairperson signed on behalf of the other trustees.[4]  Plaintiffs have not argued that the Chairperson did not have actual authority to act on their behalf.  And, although plaintiffs assume otherwise, a party need not personally sign a document to be deemed a signatory.  Rather, a signatory is any "party that signs a document, personally or through an agent, and thereby becomes a party to an agreement." Black's Law Dictionary (8th ed. 2004) (emphasis added).  The plaintiffs are, therefore, bound to the agreement and its arbitration clause as signatories.

Principally, plaintiffs' objection is that they never agreed to subject themselves to personal liability for damages

---

[3] The signature line for the employer is labeled "Binding Together Incorporated."  Although this fact supports the trustees' position, it is outweighed by the unambiguous language of the contract's first sentence.

[4] New York law vests the boards of not-for-profit corporations with the power to appoint or elect officers.  N.Y. Not-for-Profit Corp. Law § 713.

on Caldarella's employment contract.  This argument, however,

confuses the issue of liability with the agreement to arbitrate

disputes over liability.  Whether the contract subjects the

plaintiffs to individual liability on Caldarella's claims is for

the arbitrator to decide given the broad scope of the

arbitration clause, which covers "[a]ny controversy arising out

of or relating to this Agreement or the alleged breach thereof."

The plaintiffs are bound to the employment agreement as

principals, not as agents, and as signatories, not non-

signatories.  Therefore, to bind the trustees to the arbitration

clause included in their contract, Caldarella is not required to

prove that the trustees subjected themselves to personal

liability for damages under the contract.

Finally, the fact that several of the plaintiffs were not

trustees of BTI at the time the employment contract was executed

in 2004 does not alter the conclusion that all of the plaintiffs

were bound under the contract in their roles as trustees when

they approved the termination of Caldarella's employment.  New

trustees assumed the contract as successors-in-office by

accepting the benefits of Caldarella's employment as well as by

acting under the contract's provisions when they voted to

terminate Caldarella's employment for cause.  Thus, to the

extent that Caldarella is bringing claims against the individual

trustees in their roles as trustees, then it is appropriate for

him to bring those claims against the successor trustees.
Because "the instant controversy falls within the scope of a
valid arbitration agreement, it necessarily follows that
plaintiff[s] ha[ve] shown neither a likelihood of success on the
merits, nor a sufficiently serious question going to the merits
along with a balance of hardships tipping decidedly toward
[them] to warrant the grant of a preliminary injunction barring
arbitration."  Spear, Leeds & Kellogg v. Central Life Assur.
Co., 85 F.3d 21, 30 (2d Cir. 1996).


CONCLUSION

     Plaintiffs' January 24, 2008 motion by order to show cause
for a preliminary injunction is denied.  This action is stayed
pending the arbitration.  The parties shall submit a status
report by September 30, 2008.



     SO ORDERED:

Dated:    New York, New York
          March 31, 2008

                              _____
                              DENISE COTE
                              United States District Judge

10